ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
andrew@mlolegal.com

Charles Linehan, Esq. (pro hac vice forthcoming)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

*Counsel for Plaintiff Daniel E. Sieggreen*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL E. SIEGGREEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE VENTURES INCORPORATED, JON ISAAC, and VIRLAND A. JOHNSON,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Daniel E. Sieggreen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Live Ventures Incorporated ("Live" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Live; and (c) review of other publicly available information concerning Live.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Live securities between December 28, 2016 and August 3, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Live is a holding company. Until 2015, Live focused on providing online marketing solutions for small and medium business. But in fiscal 2015, the Company shifted to acquiring purportedly profitable business in various industries that have demonstrated a strong history of earnings power.

3.      On August 3, 2021, the SEC filed a complaint against Live Ventures, its Chief Executive Officer, and its Chief Financial Officer alleging "multiple financial, disclosure, and reporting violations related to inflated income and earnings per share, stock promotion and secret trading, and undisclosed executive compensation." Specifically, the SEC alleged that Live Ventures had recorded income from a backdated contract, which increased pre-tax income for fiscal 2016 by 20%, and understated its outstanding share count, which overstated earnings per share by 40%.

4.      On this news, the Company's share price fell $29.08, or 46%, to close at $33.50 per share on August 4, 2021, on unusually heavy trading volume. The stock price continued to decline $7.74, or 23%, over the next four consecutive trading sessions to close at $25.76 per share on August 10, 2021.

1

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Live's earnings per share for FY 2016 was actually only $6.33 per share; (2) that the Company used an artificially low share count to boost the earnings per share by 40%; (3) that Live had overstated pre-tax income for fiscal 2016 by 20% by including $915,500 of "other income" related to certain amendments that were not negotiated until after the close of the fiscal year; (4) that Live's acquisition of ApplianceSmart did not close during first quarter 2017; (5) that using December 30, 2017 as the "acquisition date" and recognizing income therefrom did not conform to generally accepted accounting principles; (6) that, by falsely stating that the acquisition closed during the quarter, Live recognized bargain purchase gain, which enabled the Company to report positive net income in what would otherwise have been an unprofitable quarter; (7) that between fiscal 2016 and fiscal 2018, Live's CEO received approximately 94% more in compensation than was disclosed to investors; and (8) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein,

including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11.     Plaintiff Daniel E. Sieggreen, as set forth in the accompanying certification, incorporated by reference herein, purchased Live securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Live is incorporated under the laws of Nevada with its principal executive offices located in Las Vegas, Nevada. Live's common stock trades on the NASDAQ Exchange under the symbol "LIVE."

13.     Defendant Jon Isaac ("Isaac") was the Company's Chief Executive Officer ("CEO") at all relevant times. He was also the Company's Chief Financial Officer ("CFO") from February 2013 to January 2017.

14.     Defendant Virland A. Johnson ("Johnson") has been the Company's CFO since January 2017.

15.     Defendants Isaac and Johnson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified

herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Live is a holding company. Until 2015, Live focused on providing online marketing solutions for small and medium business. But in fiscal 2015, the Company shifted to acquiring purportedly profitable business in various industries that have demonstrated a strong history of earnings power.

### Materially False and Misleading

### Statements Issued During the Class Period

17.     The Class Period begins on December 28, 2016. On that day, Live issued a press release entitled "Live Ventures Announces Biggest Year in Company History Achieving Record Earnings of $8.92 Per Share With Continued Growth Anticipated in 2017." It stated, in relevant part:

> Reporting its most successful year in the Company's history, Live Ventures reported a record $79M in revenues, an increase of 136 percent over the previous year, and net profit of approximately $17.82M, ***representing earnings per share (EPS) of $8.92.***

> Stockholders' equity, which is management's preferred measurement for performance, increased by 192 percent over 2015. Since present management took over five years ago, stockholders equity has grown at a rate of 100.58 percent compounded annually.

18.     The above statements identified in ¶ 17 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Live's earnings per share for FY 2016 was actually only $6.33 per share; and (2) that the Company used an artificially low share count to boost the earnings per share by 40%.

19.     On December 29, 2016, Live filed its annual report on Form 10-K for the year ended September 30, 2016 (the "2016 10-K"), in which the Company reported $6.33 earnings per share.

Live did not issue any public explanation for the discrepancy between the press release and the Form 10-K. And regarding "other income," Live reported:

> Other income increased for the year ended September 30, 2016 as compared to the year ended September 30, 2015 by $2,387,097. Vendor and note settlements represent $1,733,674 of the increase from fiscal 2016 vs. 2015. Gain on asset sales were $179,983 of the increase. The balance of the increase in other income $473,440 represented refunds received and a small amount of rental income.

20.    Under Item 11, "Executive Compensation," of the 2016 10-K, Live stated that Defendant Isaac was paid $200,000 as salary and $13,465 for an option award.

21.    The above statements identified in ¶¶ 19-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company had used an artificially low share count to boost the earnings per share by 40% in the prior release; (2) that Live had overstated pre-tax income by 20% by including $915,500 of "other income" related to certain amendments that were not negotiated until after the close of the fiscal year; and (3) that the Company's CEO was paid $120,000 that was not disclosed in the Form 10-K.

22.    On February 14, 2018, Live filed its quarterly report on Form 10-Q for the period ended December 31, 2017. Defendants Isaac and Johnson signed certifications pursuant to the Sarbanes-Oxley Act of 2002 attesting to the accuracy of the financial statements, the effectiveness of the Company's internal controls, and the disclosure of all material facts. The report recognized and recorded as "other income" a "bargain purchase gain on acquisition" of ApplianceSmart of $3,773,486, which Live claimed had "closed" during the quarter.

23.    The above statements identified in ¶ 22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Live's acquisition of ApplianceSmart did not close during the quarter; (2) that using December 30, 2017 as the "acquisition date" and recognizing income therefrom did not conform to generally accepted accounting principles; (3) that, by falsely stating that the acquisition closed during the quarter, Live recognized bargain purchase gain, which enabled the Company to report positive net income in what would otherwise have been an unprofitable quarter.

24.    On January 18, 2018, Live filed its annual report on Form 10-K for fiscal 2017. Under Item 11, "Executive Compensation," Live stated that Defendant Isaac was paid $200,000 as salary and $54,000 as "All Other Compensation." The Company further stated that "'All Other Compensation' for Mr. Isaac includes $54,000 for each of 2017 and 2016, which was accrued by us for the reasonable housing allowance to which Mr. Isaac is entitled under his employment agreement."

25.    The above statements identified in ¶ 24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's CEO was paid $30,000 that was not disclosed in the Form 10-K.

26.    On December 27, 2018, Live filed its annual report on Form 10-K for fiscal 2018. Under Item 11, "Executive Compensation," Live stated that Defendant Isaac was paid $200,000 as salary and $54,000 as "All Other Compensation." The Company further stated that "'All Other Compensation' for Mr. Isaac includes $54,000 for each of 2018 and 2017, which was accrued by us for the reasonable housing allowance to which Mr. Isaac is entitled under his employment agreement."

27.    The above statements identified in ¶ 26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's CEO was paid $165,000 that was not disclosed in the Form 10-K.

**Disclosures at the End of the Class Period**

28.    On August 3, 2021, the SEC filed a complaint against Live Ventures, its Chief Executive Officer, and its Chief Financial Officer alleging "multiple financial, disclosure, and reporting violations related to inflated income and earnings per share, stock promotion and secret trading, and undisclosed executive compensation." Specifically, the SEC alleged that Live Ventures had recorded income from a backdated contract, which increased pre-tax income for fiscal 2016 by 20%, and understated its outstanding share count, which overstated earnings per share by 40%. In a release summarizing the complaint, the SEC stated:

The Securities and Exchange Commission charged a publicly-traded Las Vegas-based holding company, its CEO, its CFO, an LLC controlled by the CEO, and another Nevada-based public company with multiple financial, disclosure, and reporting violations related to inflated income and earnings per share, stock promotion and secret trading, and undisclosed executive compensation.

The SEC's complaint alleges that Las Vegas-based Live Ventures Incorporated and its CEO, Jon Isaac, recorded income from a backdated contract to boost Live Ventures' pre-tax income for fiscal year 2016 by 20%. Live Ventures and Isaac also allegedly overstated earnings per share by 40% by improperly understating Live Ventures' outstanding share count. The complaint alleges that in addition to disclosing falsified financial results, Isaac hired a stock promoter to boost interest in Live Ventures. As alleged, the financial manipulation and stock promotion caused Live Ventures' share price to spike. Isaac allegedly profited by secretly selling Live Ventures shares in a nominee account that he controlled in the name of Kingston Diversified Holdings.

The complaint also alleges that Live Ventures misrepresented the date on which it had acquired a new subsidiary from Appliance Recycling Centers of America, Inc. (ARCA, currently known as JanOne Inc.), enabling Live Ventures to report a positive net income for its first quarter of 2018, which otherwise would have been an unprofitable quarter. According to the complaint, Isaac and Virland A. Johnson, who held the position of CFO at both Live Ventures and ARCA, engaged in a scheme to misrepresent the effective acquisition date, and lied to Live Ventures' auditors about the acquisition date to ensure Live Ventures could report positive net income. The complaint further alleges that Isaac underreported his executive compensation in Live Ventures' proxy statements. As alleged, for the fiscal years 2016, 2017, and 2018, Live Ventures disclosed that Isaac received, in aggregate, $162,000 of additional compensation, even though he had actually received approximately $315,000 during that period.

29.    The SEC's complaint summarized the three fraudulent schemes as follows:

4.    The first scheme occurred in late 2016, and centered on Jon Isaac's efforts to boost LIVE's FY 2016 earnings, and then to profit from the resulting spike in LIVE's stock when the earnings were announced. As part of the scheme, Jon Isaac engineered a transaction after the close of FY 2016 that falsely created the appearance that negotiations had started during FY 2016. *The deal, made between LIVE and Novalk Apps. S.A.S. ("Novalk"), created $915,500 of fraudulent "other income" and increased LIVE's FY 2016 pre-tax income by 20%. Jon Isaac lied to LIVE's outside accountants to justify recognition of the "other income" in FY 2016. Next, Jon Isaac used LIVE's inflated earnings and a fraudulently reduced share count to calculate an earnings per share amount for LIVE's FY 2016 that was 40% higher than the earnings per share in its audited financial statements. He put these fraudulently inflated earnings per share in a press release that LIVE issued on December 28, 2016.* Prior to the press release, Jon Isaac and LIVE hired a stock promoter to hype LIVE's stock, and made arrangements to access the brokerage account of Defendant Kingston Diversified Holdings LLC ("Kingston"). Jon Isaac, LIVE, and Kingston arranged to sell LIVE stock upon the anticipated rise in LIVE's stock from the inflated results. If all the orders were executed, these Defendants would have realized gross proceeds of over $1.1 million. On December 29, Jon Isaac and LIVE issued its Form 10-K, which included the fraudulent $915,500 of other income and a disclosure about the circumstances that was false, misleading, and omitted material information, including that the entire transaction arose after the close of LIVE's FY 2016. Subsequently, Jon Isaac tried to cover up

his conduct by filing a Form 8-K and issuing a letter to shareholders in which he fraudulently denied that he or LIVE had hired a stock promoter, and lied to the Financial Industry Regulatory Authority ("FINRA") about the scheme. Defendant Virland Johnson ("Johnson"), aided and abetted LIVE's false and misleading statements about recognition of the "other income" from the engineered transaction with Novalk.

5.      In the second scheme, ***LIVE falsely claimed that it had effectively closed the acquisition of a subsidiary of Defendant JanOne Inc. ("JOI/ARCA") named "ApplianceSmart," on December 30, 2017, and recognized a "bargain purchase gain" of over $3.7 million in its first quarter of FY 2018, which enabled LIVE to report positive net income in what would have otherwise been an unprofitable quarter.*** In fact, as of December 31, 2017, neither LIVE nor JOI/ARCA had transferred consideration to each other, and LIVE did not gain effective control of ApplianceSmart until 2018. LIVE, Jon Isaac, and Johnson made materially false and misleading statements about the ApplianceSmart transaction in LIVE's Form 10-Q for the quarter ending December 31, 2017. Jon Isaac and Johnson lied to LIVE's outside accountants to support recognition of December 30, 2017 as the acquisition date for accounting purposes. Defendants LIVE, JOI/ARCA, Jon Isaac, and Johnson engaged in a scheme to create the false appearance that the ApplianceSmart transaction had closed on December 30, 2017, when in fact they knew that the facts and circumstances did not support such a claim.

6.      Third, throughout the period from 2016 to 2018, LIVE failed accurately to disclose Jon Isaac's total compensation, reporting accruals of $162,000 in temporary housing allowances when $315,000 in additional compensation was actually paid to Jon Isaac over that period. In addition, throughout that same period, LIVE failed to have effective internal accounting controls to ensure that its financial results were accurately reported in its public filings.

30.      On this news, the Company's share price fell $29.08, or 46%, to close at $33.50 per share on August 4, 2021, on unusually heavy trading volume. The stock price continued to decline $7.74, or 23%, over the next four consecutive trading sessions to close at $25.76 per share on August 10, 2021.

## CLASS ACTION ALLEGATIONS

31.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Live securities between December 28, 2016 and August 3, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Live's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Live shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Live or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Live; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Live's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Live's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Live's securities relying upon the integrity of the market price of the Company's securities and market information relating to Live, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Live's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Live's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Live's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.    During the Class Period, Plaintiff and the Class purchased Live's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Live, their control over, and/or receipt and/or modification of Live's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Live, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.    The market for Live's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Live's securities traded at artificially inflated prices during the Class Period.  On June 8, 2021, the Company's share price closed at a Class Period high of $70.74 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Live's securities and market information relating to Live, and have been damaged thereby.

44.    During the Class Period, the artificial inflation of Live's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period,

Defendants made or caused to be made a series of materially false and/or misleading statements about Live's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Live and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for Live's securities was an efficient market for the following reasons, among others:

(a) Live shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Live filed periodic public reports with the SEC and/or the NYSE;

(c) Live regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Live was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Live's securities promptly digested current information regarding Live from all publicly available sources and reflected such information in Live's share price. Under these circumstances, all purchasers of Live's securities during the Class Period suffered similar injury through their purchase of Live's securities at artificially inflated prices and a presumption of reliance applies.

47.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.    Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Live who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

49.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Live's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Live's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Live's financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Live's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the

statements made about Live and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Live's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Live's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Live's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Live was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Live securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Live within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their

16

ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Live and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

17

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  August 13, 2021                    Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

**GLANCY PRONGAY & MURRAY LLP**
Charles Linehan, Esq. (pro hac vice forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

*Counsel for Plaintiff Daniel E. Sieggreen*