MARK E. FERRARIO (NVB# 1625)
GLENN MEIER (NVB# 6059)
TAMI D. COWDEN (NVB 8994)
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Email:  ferrariom@gtlaw.com; meierg@gtlaw.com
        cowdent@gtlaw.com

*Attorneys for Defendants Live Ventures Incorporated,
Jon Isaac, and Virland A. Johnson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL E. SIEGGREEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVE VENTURES INCORPORATED, JON ISAAC, and VIRLAND A. JOHNSON,<br><br>Defendants. | Case No.: 2:21-cv-01517-CDS-EJY<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT [ECF 31]**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Live Ventures Incorporated ("Live" or the "Company"), Jon Isaac ("Isaac"), and Virland A. Johnson ("Johnson," collectively, the "Defendants"), by and through their undersigned counsel, submit this Reply in Support of their Motion to Dismiss Plaintiff's Amended Class Action Complaint  (the "Amended Complaint" or "FAC") (ECF 25) pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), as well as the Private Securities Litigation Reform Act (the "Reform Act" or "PSLRA"), 15 U.S.C. § 78u-4.

This Reply is based on the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and such oral argument the Court may entertain at any hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    ARGUMENT**

This Court should grant the Motion to Dismiss.  Plaintiff has failed to show that the

*ACTIVE 688391553v1*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

Amended Complaint pleads sufficient facts to satisfy the elements of the pleaded cause of actions, Even though both the securities fraud and scheme liability causes of action rely on purported misrepresentations, Plaintiff failed to allege facts sufficient to show that any material misrepresentations were made, or to show scienter. Accordingly, the second and third causes of action must be dismissed. Because the claims for a primary violation fail, Plaintiff's second cause of action, for §20(a) "control person" liability must also be dismissed.

A.    **Plaintiff's First and Third Claims for Securities Fraud and Scheme Liability Must Be Dismissed For Failure to Plead Facts Demonstrating Any Material Misrepresentations or Omissions.**

*Both* Plaintiff's first cause of action, alleging violations of SEC rule 10b-5(b), and this third cause of action alleging scheme liability, required Plaintiff to allege facts showing a misleading statement, including why such statements were misleading, as well how such a misrepresentation was material to investors. *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (citing 15 U.S.C. § 78u-4(b)(1)(A)-(B)).  Plaintiffs failed to do so. Accordingly, the FAC should be dismissed.

1.    *The Novalk Amendment.*

Plaintiff failed to allege facts showing that the Live's recognition of $915,500 in other income on its FY 2016 Financial Statements related to the Novalk Amendment was false and misleading.  Plaintiff's arguments on this issue are based on  Plaintiff's apparent belief that having a different effective date and execution date on a contract is inherently improper, and by Plaintiff's misunderstanding of the appropriate application of GAAP standards to this type of transaction.

Plaintiff does not deny that the Norwalk Amendment existed.  Instead, he claims that its effective date cannot not be September 15, 2016, because it was not executed until December.  But Plaintiffs provide no authority to the effect that contracts may not have an effective date that precedes the actual execution of the agreement. Furthermore, Plaintiffs do not allege nondisclosure of the difference between the execution and  effective dates. See FAC ¶ 148; RJN, Ex. A at F-29.

Plaintiff's claim related to this issue is apparently based on a misunderstanding of the relevant accounting principles.  Plaintiff cites  ASC 855-10-25 as stating that  an entity should not

*ACTIVE 688391553v1*

recognize subsequent events that provide evidence "about conditions that did not exist at the date of the balance sheet, but arose after the balance sheet date before financial statements are issued." Yet ASC 855-10-25 also states:

> An entity **shall** recognize in the financial statements the effects of all subsequent events that provide additional evidence about conditions that existed at the date of the balance sheet, including the estimates inherent in the process of preparing financial statements.

ASC 855-10-25 (emphasis added).

By insisting that the Novalk Amendment could only concern conditions that had not existed as of the date of the balance sheet. Plaintiff is confusing the "subsequent event"—the Novalk *Amendment*—with the "conditions that existed"—Live's obligations prior to the Novalk *Agreement*. The Novalk Amendment was a subsequent event that occurred before Live issued its FY 2016 10-k, yet influenced an existing condition – the liability accrual on Live's balance sheet as of September 30, 2016. Disclosure of this subsequent event was necessary to Live's liability under the Agreement. Without such disclosure, Live's reported liabilities described in the FY 2016 would not have been accurate. Plaintiff's interpretation of this rule essentially eliminates *any* recognition of subsequent events, as those events could never have been existing conditions.

### 2. Live's 2016 EPS Disclosures.

Plaintiff does not deny that Live's December 29, 2016 press release contained all material facts about how the earnings per share calculation therein was made (as did its FY 2016 SEC form 10-K). Instead, Plaintiff attempts to misidentify those facts as indicating a "truth on the market" defense, claiming such defenses are "intensely fact-specific and rarely dismissed at the pleading stage. Opp., p. 10. Plaintiff then cites a case discussing the omission based theory of liability as requiring the statement to be viewed in context, overlooking that Live had omitted *no* material information. *Id.* Ironically, Plaintiff requests that the Court focus only on discrete portions of the challenged statement, and ignore the significant information it contained.

Whether a statement is misleading depends on whether it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Here, the press release issued by Live on December 28, 2016 reported that Live's net profit had been $17.82

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

*ACTIVE 688391553v1*

million, resulting in earnings per share of $8.92. FAC ¶¶ 9, 60, 146; RJN, Ex. C. Simple arithmetic—dividing 17.82 million by 8.92—reveals that this calculation was based on 2,000,000 shares. The press release also advised the public of Isaac Capital Group's agreement to "lock up" approximately 800,000 shares, which reduced the count of outstanding shares from approximately 2.8 million to 2.0 million. The press release further reported that the stock lock-up had occurred in December 2016 two months *after* the close of Live's fiscal year. No reasonable investor could have assumed that an EPS calculation based on the number of outstanding shares existing *after* an event had reduced the number of such shares by 800,000 somehow signified an EPS that existed *before* such reduction. Thus, press release allegations do not support a Rule 10b-5(b) violation.

### 3. Live's January 2017 letter.

Plaintiff claims that Defendants "falsely" denied "that they had engaged in any paid promotional activity[.]" **FAC** ¶¶ 14, 72, 157. This claim is based on Live's statement in a January 2017 letter that included the following statement: "Had our company truly engaged in any type of promotional activity … [we] would have sold shares." *Id*. [1]. Leaving aside whether this statement actually constitutes a denial, Plaintiff failed to allege facts showing this statement was material. Dismissal at the pleading stage is possible when a purported misrepresentation is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

Whether Live hired a stock promoter is obviously unimportant to an investor, given such conduct is not only legal, but need not even be disclosed is permissible under the securities laws, and such hiring need not be disclosed. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) (noting that a company was not precluded from hiring analysts to promote a company and that companies that hire promoters have no obligation to report on such conduct.). Plaintiff appears to contend, without supporting authority, that the statement is material simply because it is purportedly false.

---

[1] While Plaintiff contend this statement constituted a denial of paid promotional activity, taken in context considering the entirety of he letter, a more reasonable interpretation is that the company was denying the claims made in the press that it had engaged in stock promotion activity to sell stock at artificially high prices. That the company had not sold stock, but instead, had purchased it, suggests that that any promotional activity was not for nefarious purposes. See RJN, Ex. I.

*ACTIVE 688391553v1*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

Plaintiff supports the claim that the cited statement was a "false denial" based on the theory that "couching an issue as hypothetical when issue had already occurred is necessarily false and misleading." Opp., p. 11, citing *Berson v. Applied Signal*, 527 F.3d 982 (9th Cir. 2008). But *Berson* contains neither such language nor even any hypothetical assertion. Instead, that case involved a statement that described a federal contractor's "backlog" as including "anticipated revenues from the uncompleted portions of existing contracts," without disclosing that such contracts had already experienced stopwork orders for portions of the work. The stopped work would likely never have been realized. The *Berson* court rejected Defendants' argument that investors would have known that any contract could have work by noting the difference between knowing that a risk event *had occurred* and knowing that it *could occur*. *Berson* at 986-987. It is from this point that Plaintiff apparently fashions his "hypothetical" rule. Plaintiffs also relies a case holding that where promotional activity included making kickbacks, such kickbacks had to be disclosed in a discussion regarding promotion activity. *In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *7 (S.D. Cal. June 1, 2020). But neither case supports the theory that denial of a circumstance that is itself immaterial can render the circumstance material.

### 4.    *The Appliance Smart Transaction.*

Similarly, Plaintiff's claims based on the ApplianceSmart Transactions fail, because the cited public statements contain full disclosures relating to the transaction, including disclosure of the SPA itself as an exhibit to Live's SEC filings. *See* RJN, Ex. D at 29; RJN, Ex. E; RJN, Ex. F at 16, 27 (Note 14), Ex. 10.1 (SPA). These disclosures included that (i) the parties executed the SPA on December 30, 2017; (ii) Live was not expected to pay the $6.5 million purchase price until March 31, 2018; (iii) Live was expected to satisfy the purchase price by delivering "funds to certain third-party lenders of [JanOne] and ApplianceSmart"; and (iv) ApplianceSmart's shares were held by a third party and would not be released to Live until it satisfied the purchase price. RJN, Ex. D at 29; RJN, Ex. E; RJN, Ex. F at 16, 27 (Note 14), Ex. 10.1 (SPA). Additionally, Live periodically reported events related to the transaction—such as Live's issuance of a promissory note to JanOne that extended the time to satisfy the purchase price under the SPA. *See id*. Ex. D at F-15.

*ACTIVE 688391553v1*

Plaintiffs focus on MidCap's physical possession of the ApplianceSmart stock certificate is legally irrelevant, because possession of the stock certificate did not prevent Live from assuming control over ApplianceSmart and accruing its revenues and expenses.  Possession of a stock certificate does not establish ownership or control of the stock.  *Lucas v. Lucas*, 946 F.2d 1318, 1323–24 (8th Cir. 1991) (holding agent's possession a stock certificate did not alter fact that the shareholder still owns the security) (citing *Richardson v. Shaw*, 209 U.S. 365, 378 (1908)).

Plaintiff's allegations cannot show a 10b-5 violation based on the ApplianceSmart transaction.

### 5.    *Isaac's Compensation Disclosures.*

Plaintiff alleges that Isaac's compensation was not properly disclosed, FAC ¶¶ 19, 29, 96-105, 173-174.  This aspect of Plaintiff's claims depends on the theory that a company must report actual, rather than accrued, compensation amounts—despite disclosure of the method used.  Here, Live's SEC filings fully disclosed the amounts accrued for Isaac's housing allowance.

Plaintiff  further failed to allege that any omission was material.  Indeed, Plaintiff himself relies on authority gauging materiality of compensation disclosures based on the comparisons to the company's value. See Opp., p. 13, citing *SEC v. Premier Holding Corp.*, No. SACV 18-00813-CJC(KESx), 2020 U.S. Dist. LEXIS 247561, at *23-24 (C.D. Cal. Nov. 30, 2020) ("Letcavage's significant compensation was material to investors especially given the modest value..).  Plaintiff has not alleged facts sufficient to show the materiality of purported undisclosed amounts.

Plaintiff appears to argue that the mere fact that he alleged Live had restated certain financial filings is sufficient to plead state securities fraud claims under the PSLRA,  as restatement indicates error in the original filing.. Opp., p. 14, citing *Sudunagunta v. Nantkwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228534 (C.D. Cal. Sep. 20, 2017).   But *Sudunagunta* construed the sufficiency of allegations under Sec 11 of the Securities Act, which imposes strict liability for statements contained in registration statements.  See  15. U.S.C. § 77k (a). As the *Sudunagunta* court acknowledges, it is not enough to merely show inaccurate statements existed; Plaintiff must plead facts showing the inaccuracies were material. *See Sudunagunta,*  at *29 (noting that question is whether "the omitted information was material.")

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

*ACTIVE 688391553v1*

### 6. *Plaintiff's Regulation S-K Regulation Allegations.*

Plaintiff contends that Live did not specifically address his allegations of violations of Regulation S-K, thus waiving any challenge to the sufficiency of these. Opp. 14-15.  However Plaintiff ignores the following relevant express challenges to each of cause of action:

Plaintiff's claims relating to Live's FY 2016 disclosures are fatally flawed as Plaintiff fails to allege any material misstatement or omission.

[T]he Plaintiff's securities fraud *claims relating to the disclosures surrounding the ApplianceSmart transaction* are also equally under-plead. Plaintiff's claims relating to Isaac's compensation disclosures do not allege a material misstatement or omission,

[T]here was no material misrepresentation in Live's FY 2016 Financial Statements as to the Novalk Amendment and Plaintiffs' claims *predicated on these representations must be dismiss*ed.

As all of the facts surrounding the EPS calculations were fully disclosed, *Plaintiff fails to allege a misstatement or omission capable of supporting a claim against any of the Defendants*.

Plaintiff seeks to prop up each of his claims through allegations of a purported scheme to defraud investors in connection with Live's  FY2016 disclosures and . . . and alleged stock sales from a third-party brokerage account . . .  *Plaintiff's convoluted theory of liability fails*

*To the extent Plaintiff's claims are predicated on disclosures relating to the ApplianceSmart transaction, such allegations fail* on their face as the circumstances surrounding the transaction and all material facts were disclosed.

Plaintiff attempts to support each of its claims by alleging that Defendants failed to properly disclose compensation paid to Isaac . . . *These allegations are insufficient to state a claim.*

 Plaintiff was required to plead particular facts presenting a "cogent and compelling" case of scienter as to each particular defendant in order to survive a motion to dismiss with respect to each of his securities fraud claims. . . . Plaintiff's factual allegations in support of scienter generally fall into four categories: (1) Isaac's and Johnson's purported "knowledge" of the falsity of statements made in Live's financial disclosures based on the their executive roles with the Company; (2) Isaac's and Johnson's approval of financial disclosures that Plaintiff incorrectly contends failed to comply with GAAP; (3) Defendant's purported effort to capitalized on Live's "inflated stock price" based on the Company's financial disclosures; and (4) subsequent recognition of ineffective internal controls requiring restated financial disclosures. *None of these types of allegations are sufficient to support a "cogent and compelling" case of scienter as to any of the Defendants and the Amended Complaint* should be dismissed as to each of them.

*ACTIVE 688391553v1*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

Motion to Dismiss, pp. 1, 14, 15, 17, 20 (citations omitted). In short, Live repeatedly asserted Plaintiff's claims—i.e., the three causes of action—were not supported by factual allegations of substantive misconduct.

Plaintiff's allegations of violations of Regulation S-K are all premised on the alleged misconduct constituting "known trends or uncertainties" or as "risks" to the company's business prospects. *See* FAC ¶ 139 ("Here, Live's [alleged misstatements and omissions] were known trends or uncertainties likely to have a material unfavorable impact on Live's net revenues or income.); ¶143 ("Live failed to adequately disclose, and in fact, did not disclose at all, in the "Risk Factors" section of its SEC filings, the risks to Live's business, operations, and prospects, due to [alleged misconduct]. . . ."). In short, the allegations of Regulation S-K are dependent upon the sufficiency of Plaintiff's pleading of the purported misrepresentations and omissions..

Because Plaintiffs repeatedly asserted that *claims* based on or related to Plaintiff's theories of substantive misconduct were insufficient, Plaintiff's claim that Live did not challenge liability on the basis of violations of Regulation S-K is meritless.

7.   ***Plaintiffs' Scheme Liability Claim is Dependent on Purported Misleading Statements.***

Remarkably, Plaintiff contends because Live argued that the scheme liability claims fail due to the insufficient pleading of facts showing misrepresentations or omissions, that Live waived any argument that the scheme liability claims are insufficient. Opp. 16. Plaintiff contends that scheme liability does not require that any misrepresentations actually have been made, citing *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015 (stating elements of scheme legality claim are: (1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation.).

However, the schemes that Plaintiff alleges existed are each dependent upon the existence of purported misrepresentations. *See Huei-Ting Kang v. PayPal Holdings, Inc.*, 21-cv-06468-CRB, at *23 (N.D. Cal. Aug. 8, 2022) (where a scheme liability claim is dependent upon the

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

*ACTIVE 688391553v1*

existence of false statements, the failure to adequately plead such false statements is fatal to the scheme liability claim.)  The scheme liability allegations turn on the purported making  of false statements to the public through SEC financial reporting, press release, or a letter to shareholders. *See  e.g.,* FAC ¶¶ 146-191,  225, 236-247.  Yet as shown above, Plaintiff's allegations are insufficient to allege the existence of any false or misleading.  If the underlying misrepresentations upon which the scheme liability claims reply fail, then so too must the scheme liability claims fail, as no viable scheme has been alleged.

B.   **Plaintiff's First and Third Claims for Securities Fraud and Scheme Liability Must Be Dismissed For Failure to Plead Facts Demonstrating a Strong Inference of Scienter.**

Plaintiff failed to plead particular facts presenting a "cogent and compelling" case of scienter as to each particular defendant in order to survive a motion to dismiss with respect to each of his securities fraud claims.  *See.Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, (2007). This required allegations showing the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  A plaintiff must  "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388-89 (9th Cir. 2002).  Plaintiff needed to allege facts showing what *each* defendant knew, *when* he knew it, and *how* he acquired the  knowledge sufficient to support an intent to deceive or defraud.  *In re VerSign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007).

Here, Plaintiff's scienter allegations do not address the "what, when and how" of each defendant's knowledge.  *See In re Wet Seal, Inc.*, 518 F. Supp. 2d 1148, 1175 (C.D. Cal. 2007). Plaintiff did not point to any allegations that satisfy this requirement in his Opposition.

### 1.  Allegations of Motive Insufficient

Plaintiff contends that he sufficiently pleaded scienter by pleading his motive theories. Opp. at p. 18-19. But a "mere showing of motive and opportunity [does] not suffice  to survive a motion to dismiss." *Howard v. Everex Sys.*, 228 F.3d 1057, 1064 (9th Cir. 2000).

### 2.  Plaintiff's GAAP Allegations Were Insufficient to allege scienter.

Contrary to Plaintiff's assertions, allegations of departures from GAAP are not enough to

Page 9 of 13

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

*ACTIVE 688391553v1*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

allege scienter . *SEC v. Todd*, 642 F.3d 1207, 1218 (9th Cir. 2011) ("Generally, a GAAP violation is insufficient, without more, to support a finding of scienter.") (citation omitted). Plaintiff contends that scienter has been shown because the alleged GAAP departures involved simple and straightforward requirements and are of significant magnitude.   Opp. p. 20-21. However,  as shown above, the provisions at issue here are far from straightforward.  Nor do the allegations in the complaint support this theory.  To plead scienter on this basis:

> . . . At the very least, the plaintiff must present facts demonstrating that the defendant was aware of the relevant GAAP principle and that this defendant knew how that principal was being interpreted.  The Plaintiff must then plead facts explaining how the defendant's incorrect interpretation was so unreasonable or obviously wrong that it should give rise to an inference of deliberate wrongdoing.

*May v. KushCo Holdings, Inc.*, No. 8:19-cv-00798-JLS-KES, 2020 U.S. Dist. LEXIS 213905, at *15-16 (C.D. Cal. Sep. 25, 2020), citing *In re Medicis Pharm. Corp. Secs. Litig.*, No. CV-08-1821-PHX-GMS, 2010 U.S. Dist. LEXIS 81410, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010).  Here, Plaintiff did not allege any such facts specific to any defendant.  See FAC 56.

Plaintiff claims that the magnitude of the GAAP violations was such that it had significant impact on core business operations, and then attempts to bolster his argument with a a quotation from  *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016): "These were not minor accounting errors. To the contrary, they dramatically affected [Defendants]' financial results, and in ways that a typical corporate executive should have noticed them." Opp. pp. 21-22. However, the result of the GAAP deviations alleged in *Thomas* were indeed dramatic and noticeable: the plaintiff in Thomas alleged that "Magnachip's total revenue was inflated by ***$121.7 million and total net income by almost 500%,. . .***" *Thomas* at 1042.  There are no comparable claims here, where the allegation are that the FY 2016 income was inflated by less than $1 million.

Plaintiff contends that his allegations re GAAP deviations were enough to allege scienter, because, he claims, Defendants ignored red flags. Opposition, pp. 20-24. However, Plaintiff supports this claim by citing *Batwin v. Occam Networks, Inc*., 2008 WL 2676364, at *17 (C.D. Cal. July 1, 2008),.  *Batwin* held that that allegations of GAAP violations, ***coupled with***

*ACTIVE 688391553v1*

*allegations of red flags being ignored*, can satisfy the scienter pleading requirements. But the FAC does not allege that any red flags were dismissed, and the Opposition cannot supplement the FAC. "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Moreover, "red flags" cited in the Opposition are hardly compelling. Plaintiff points to Live's *disclosures* in its SEC filings of perceived ineffective controls over financial reporting in 2016 and 2017 as evidence of scienter as to the misrepresentations claimed here. Opp. at p. 22, citing FAC ¶¶ 66-67, 75, 108, 119,. 123. But here, Plaintiff citation to a case finding that disclosures of ineffective account controls constituted a red flag where the claimed misrepresentations were *assertions that internal controls were adequate*. *In re New Century*, 588 F. Supp. 2d 1206, 1215 (C.D. Cal. 2008) ("The Complaint alleges that New Century Officer Defendants touted the company's internal controls, loan quality, and underwriting standards throughout the Class Period."). Similarly, in *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1191 (D. Nev. 2009), also cited by Plaintiff, Opp. at p. 22, the plaintiffs alleged that "Defendants misled investors as to the adequacy of Shuffle Master's internal controls." Plaintiff cited no authority for the conclusion that allegations of contemporaneous *disclosures* of weaknesses in financial reporting controls support an inference of scienter as to alleged misrepresentation that do not offer assurance of adequate controls.

Finally, Plaintiff contends that the changes in auditors experienced by Live constituted "similar circumstances" to a case in which a change in auditors was deemed to support an inference of scienter. Opp. p. 22-23. Yet the "similar circumstances" described in the authority cited by Plaintiff consisted of allegations that the change in auditors had occurred three days *after* the auditor had informed the company that its FY financial reports were materially misleading. *Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-cv-01640, 2022 U.S. Dist. LEXIS 70597, at *78 (N.D. Ill. Apr. 18, 2022). No similar allegations are made here.

Plaintiff did not adequately plead scienter based on departures from GAAP or a failure to

*ACTIVE 688391553v1*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773; (702) 792-9002 (fax)

heed red flags.

### 3. The existence of an SEC investigation does not establish scienter.

Finally, Plaintiff contends that the existence of the SEC investigation and claim supports scienter. Opp. C However, courts have generally agreed that the mere existence of an SEC investigation cannot establish scienter. *Zamir v. Bridgepoint Educ., Inc.*, No. 15-CV-408 JLS (DHB), 2018 U.S. Dist. LEXIS 40247, 2018 WL 1258108, at *17 (S.D. Cal. Mar. 12, 2018) (collecting cases).

Plaintiff has thus failed to allege facts sufficient to support scienter.

## II.    CONCLUSION

Plaintiff's allegations are insufficient to satisfy the heightened pleadings standards under the PSLRA, applicable to his first cause of action, for purported misstatements in violation of Rule 10b-5(b), as he failed to allege facts sufficient to show that material misrepresentations were made, or that there was scienter. Therefore, the first cause of action must be dismissed. Because of this failure, Plaintiff's second cause of action for control liability also fails. And, because Plaintiff's third cause of action, for scheme liability in violation of Rule 10b-5((a) and (c) depends on misrepresentations for the scheme to have been viable, the third cause of action must also be dismissed.

Dated this 20th day of July, 2023.

GREENBERG TRAURIG, LLP

By: */s/ Tami D. Cowden*
Mark E. Ferrario (NVB# 1625)
Glenn Meier (NBV# 6059)
Tami D. Cowden (NVB # 8994)

*Attorneys for Defendants Live Ventures Incorporated, Jon Isaac, and Virland A. Johnson*

*ACTIVE 688391553v1*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 12th day of July 2023, a true and correct copy of this ***Reply in Support of Motion to Dismiss Amended Class Action Complaint [ECF 31]*** was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties registered to this case by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Andrea Lee Rosehill*
An employee of Greenberg Traurig, LLP

*ACTIVE 688391553v1*